**FASCO INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 13014.**

United States Court of Appeals
Fourth Circuit.

Argued May 8, 1969.

Decided July 9, 1969.

Ransom A. Ellis, Jr., Springfield, Mo. (L. W. Hannah, and Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, Mo., on brief), for petitioner.

Sanford H. Fisher, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel,

Marcel Mallet-Prevost, Asst. Gen. Counsel, and Herman M. Levy, Atty., N. L. R. B., on brief), for respondent.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

During a union organizational campaign at the company's Ozark, Missouri, plant, which began in August, 1967, the company was found by the Board to have committed violations of §§ 8(a)(1) and 8(a)(3) of the Act. The violations included the promulgation, maintenance and discriminatory enforcement of a rule inhibiting participation in union solicitations during nonworking time; coercive interrogation of employees concerning their union activities and sympathies; the offer of employee benefits to induce a withdrawal of support from the union; unlawful surveillance of a union meeting; and denial of a wage increase to one employee for discriminatory reasons. Persuaded that the Board's findings and conclusions are supported by substantial evidence in the record as a whole, we will enforce its corrective order.

I

The principal issue we must decide is the validity of the company's no solicitation rule, which was promulgated in a booklet, entitled "You and Fasco," distributed to employees a few days after the union's organization campaign had begun. While there was a suggestion in oral argument that there had been an earlier version of the no solicitation rule, the record does not reflect the existence or text of any predecessor no solicitation rules. The entire text of the rule, with emphasis on the portion challenged, follows:

"SOLICITATION

All companies are targets of various forms of solicitation. In order to spare our employees the annoyance and disturbance of various forms of solicitation we feel that during working time all solicitation should be curtailed unless it has been properly authorized by departmental supervisor and Personnel Department. This involves selling of tickets, taking of orders, soliciting subscriptions, distribution of literature, membership in any organization, or any other type of materials or verbal contacts intended to gain the interest of FASCO employees during working time. *On nonworking time, i. e., before work, after work, break time and lunch time, the solicitation of employees described above will not be permitted unless properly authorized, except as permitted by Federal and State statutes and applicable court decisions thereunder, and then only if it does not interfere with the production of other employees or create safety or disciplinary problems."*

The challenged portion of the rule broadly prohibits all solicitation by employees during nonworking time, without company authorization, then seeks to except from the rule that solicitation which may be permitted by law, and finally qualifies this exception by the requirement that the solicitation must not interfere with the production of other employees or create safety or disciplinary problems. This portion of the rule is susceptible of two readings with regard to the need for prior company approval of solicitations on nonworking time: (1) that prior approval is needed for any solicitation including those specifically permitted by law, or (2) that prior approval is needed only for solicitation not specifically protected by law.

■■ Even if the rule is read not to require prior company approval for any solicitation specifically protected by law, an employee must have a high degree of legal sophistication to know precisely what is permitted by "Federal and State statutes *and applicable court decisions thereunder*" (emphasis supplied) in order to know what he may and what he may not do without fear of employer retribution. Through the eyes of an average employee—and it is by him that the validity of the rule is to be measured,

NLRB v. Lexington Chair Co., 361 F.2d 283 (4 Cir. 1966)—there may be considerable doubt concerning the nature and extent of permissible activities, if any. It follows that an employee desiring to engage in union solicitation "might well be deterred, or else reasonably assume that he acted at his own peril" if he did not obtain prior company approval. NLRB v. Walton Mfg. Co., 289 F.2d 177, 180–181 (5 Cir. 1961); Winchester Spinning Corp. v. NLRB, 402 F.2d 299, 303–304 (4 Cir. 1968). Manifestly, the rule violates the presumption that on nonworking time employees may freely engage in union solicitation. Korn Industries, Inc. v. NLRB, 389 F.2d 117, 124 (4 Cir. 1967); NLRB v. Lexington Chair Co., *supra*, 361 F.2d at 286; NLRB v. Walton Mfg. Co., *supra*, 289 F.2d at 180.

Aerodex, Inc., 149 NLRB 192, 57 LRRM 1261 (1964), relied on by the company to sustain the validity of the rule, is not persuasive in the instant case. In *Aerodex* the issue of ambiguity was not raised and, furthermore, in that case, unlike here, the Board found that the employees clearly understood that they could solicit freely on nonworking time irrespective of the broad, prohibitory language of the rule.

Concluding that the rule is invalid *per se* for the reasons stated, we see no need to discuss whether a rule unambiguously describing the right to solicit for legally protected activity might validly restrict the exercise of § 7 rights to those which do "not interfere with the production of other employees or create safety or disciplinary problems" under the facts of this case. See, Korn Industries, Inc. v. NLRB, *supra*. *Cf.*, NLRB v. Lexington Chair Co., *supra*.

## II

Despite the company's vigorous challenges, we see no need to detail evidence with regard to the Board's findings that the company discriminatorily applied the no solicitation rule to union adherents, coercively interrogated employees concerning their union activities and sympathies, made an offer of employee benefits to induce a withdrawal of support from the union, conducted unlawful surveillance of a union meeting, and discriminatorily denied a wage increase. It suffices that, from a careful examination of the record as a whole, we find substantial evidence to support the findings. In large part, the Board's conclusions are based upon determinations of credibility for which we find no basis to question.

Enforcement granted.